Charles Robert SPENCER, Appellant,

v.

The STATE of Texas, Appellee.

No. 43497.

Court of Criminal Appeals of Texas.

April 7, 1971.

Rehearing Denied June 2, 1971.

Charles W. Tessmer, Ronald· L. Goranson, Dallas, for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Harry J. Schulz, Jr., W. T. Westmoreland, Jr., and Edgar A. Mason, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ROBERTS, Judge.

This is an appeal from a conviction for sale of marihuana; the jury assessed the punishment at 50 years.

Sam J. Roberts, a special agent of the Bureau of Narcotics and Dangerous Drugs, testified outside the presence of the jury, in a hearing to determine the admissibility of his in-court identification of appellant, that on July 3, 1968, he met the appellant, who identified himself to Roberts by the name of "Chuck." He further testified that on that date he purchased marihuana from the appellant and that since that date he had seen the appellant in the Dallas County Jail in a one to one confrontation with no attorney present, but that his identification was based solely on having seen the appellant on July 3, 1968, and that he would still be able to identify the appellant had he not seen him in the Dallas County Jail. The sale was made in Lee Park in Dallas. At that time, he described the appellant as having a moustache, a goatee, and long hair which was not long enough to hang down on his shoulders. He saw the appellant in the jail on two different nights in July of 1969. On one of those visits, the appellant signed a waiver of constitutional rights, and Roberts tried to persuade him to become an informer.

The appellant moved that Roberts' testimony be suppressed on the grounds that his identification was influenced by the jail visits which did not meet the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. The court then denied the motion to suppress.

The jury was then returned to the courtroom and Roberts testified that he had been a narcotics agent for seven years. In response to a prosecution question as to why he was wearing sun glasses, he stated that his left eye had been "severely injured" in another narcotics raid in February, 1969. On July 2, 1968, he went to Lee Park and saw the appellant, who had longer hair than

he now had and also had a moustache and a goatee. Roberts testified that the appellant told him that in a few hours he would pick up a pound of marihuana and some LSD. They made an agreement for Roberts to purchase 10 tablets of LSD at $7 a tablet and one or two "lids" of marihuana. The next day, July 3, Roberts purchased two "lids" from "Chuck" for $30, while they drove around the block in a yellow, 1958 Volkswagen. The two bags of marihuana were then introduced into evidence. Prior to June 1, 1969, Roberts had never seen the appellant without the long hair, moustache, and goatee.

Roberts further testified that he had made approximately 800 buys of marihuana during the last seven years. Also, he traced the yellow Volkswagen and it was owned by Randy Thornton.

A chemist with the Dallas Regional Laboratory of the Bureau of Narcotics and Dangerous Drugs testified that he had analyzed the contents of the two bags given him by Roberts and found that the substance was marihuana. The bags contained 32.7 grams, which could make from 50 to 150 marihuana cigarettes.

James Williams, another agent for the Federal Bureau of Narcotics and Dangerous Drugs, observed the incident, saw a person drive up in a yellow Volkswagen, and identified the appellant as that person who had longer hair, a moustache, and a goatee. Williams had never seen the appellant shaven and with short hair until the day of trial, but had seen pictures of him. On re-direct examination, Williams testified, "I would say he resembles him greatly."

The appellant took the stand in his own behalf and testified that he was 22 years old, was working as a gravedigger in Smithfield, and had quit school in the tenth grade to enlist in the Navy. He denied that he sold or offered to sell either marihuana or LSD to Roberts, denied that he was ever paid $30 for either marihuana or LSD, and

denied that he ever saw Roberts. He further testified that he did not know Randy Thornton, had never driven a yellow Volkswagen, and had never been in a Volkswagen with Roberts. He admitted that in July of 1968, he had longer hair, a moustache, and a goatee. He also testified that he had never seen the type of substance contained in the two bags before.

Appellant's first ground of error is that Roberts' in-court identification was inadmissible because it was tainted by unlawful pre-trial identification.

The cases of United States v. Wade, 388 U.S. 218, 87 S.Ct.1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct.1951, 18 L.Ed.2d 1178, "were fashioned to deter law enforcement authorities from exhibiting an accused to witnesses prior to trial for identification purposes without notice to and in the absence of counsel absent an intelligent waiver by the accused." Martinez v. State, Tex.Cr.App., 437 S.W.2d 842. If, as was done in this case, the accused is subjected to a pre-trial identification process in the absence of counsel, "the in-court identification is not admissible at all unless the prosecution can establish by clear and convincing proof that the testimony is not the fruit of the earlier identification made in the absence of the accused's counsel." Martinez v. State, supra. Put another way, these cases mean that the in-court identification "is not to be received into evidence without first determining that it was not tainted by the illegal lineup or pre-trial identification procedure but was of independent origin." Martinez v. State, supra; Gilbert v. California, supra.

The trial court should determine whether the courtroom identification is tainted or is of independent origin. Here, the trial court properly held a hearing to determine the question, but it failed to enter written findings or state into the record the reason for admitting the testimony. See: Martinez v. State, supra. We adhere to the rule that the court should make findings but in the present case there was no request or ob-

jection to the failure to do so. The record contains sufficient evidence for the court to conclude as he no doubt did, that the in-court identification was not tainted.

■ At the hearing, the burden is upon the prosecution to establish by "clear and convincing proof" that the testimony is not the fruit of the earlier identification made in the absence of counsel or intelligent waiver of counsel. By "clear and convincing" is meant "so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind." Martinez v. State, supra; In re Jost (1953), 117 Cal.App.2d 379, 256 P.2d 71.

The waiver alluded to is not in the record and therefore not reviewable by this Court.

The appellant argues that Roberts' visits to Spencer were made for the purpose of allowing Roberts to identify Spencer, since out of several Federal Narcotics Officers in Dallas County, it was he who went to the jail to question Spencer. Some of the relevant testimony was as follows:

"Q   I will ask you, at a time after that, that is the date of July the 3rd, 1968, if you had an occasion to see him in the Dallas County Jail?

"A   Since July the 3rd I have seen him in the County Jail.

"Q   Had you not seen him in the County Jail, would you be able to identify him in Court today as one and the same person that you observed on July the 3rd of 1968 that sold to you a narcotic drug?

"A   Yes, sir.

"Q   And your identification is made solely on having seen him on the date of July the 3rd of 1968 and is not based on having seen him since nor any other reason, is that correct?

"A   Yes, sir.

*   *   *   *   *   *

"A   I asked him if he would cooperate with us on trying to get some sources of narcotics.

"Q   And by cooperation, just what did you mean?

"A   I meant by his giving us names of people who were buying—dealers that he was aware of and so on so we could take it from there and try and develop cases against them.

*   *   *   *   *   *

"Q   * * * Did you or did you not seek to make an informer of my client?

"A   I sought to get some cooperative information from him.

"Q   That was in the nature of information, wasn't it?

"A   Yes, sir.

"Q   That would make him an informer, wouldn't it?

"A   Yes, sir.

*   *   *   *   *   *

"Q   Would you explain to us the duties of an undercover Federal Narcotics Officer?

"A   Yes, sir. We conceal our identity and use various forms of names and employments in order to try to develop cases on major dealers of narcotics and drugs."

From this testimony, it would not be an abuse of discretion for the trial judge to find that the visits were made solely to seek the appellant's help in apprehending narcotics dealers and not for the purpose of identifying the appellant. Since Roberts, as a State's witness, did view the appellant,

his visits to the appellant in jail necessarily constituted a pre-trial identification without counsel as contemplated by Wade, Gilbert, and Martinez, and a determination as to whether the identification was tainted was clearly necessary. Nevertheless, we must keep in mind that the rationale of Wade and Gilbert was that a witness to a crime may be unduly influenced by an identification procedure which unfairly suggests that a particular person is the one the witness is trying to identify. Because it is the suggestiveness that is crucial, it is relevant for the court to consider that the witness is a trained law enforcement officer, experienced in making identifications, and who first comes in contact with the accused for the sole purpose of watching and observing him in order to be able to accurately identify him in court. Under those circumstances, the Wade-Gilbert proscription against undue suggestiveness is more easily satisfied than when the witness is a victim of a crime of violence, or a bystander untrained and inexperienced in making identifications, and who only observes the accused for a short time and under stress. The fact that the improper viewing of the accused was made for a legitimate purpose other than identification is also a factor for the court's consideration where the witness is a law enforcement officer with Roberts' qualifications and who first came in contact with the accused for the sole purpose of later identifying him.

■ The question, then, which is presented before us, is whether the trial court abused its discretion in finding that every reasonable mind must agree that Roberts' courtroom identification was of an independent origin.

In this case, the record indicates that the trial court afforded the appellant a fair hearing on the matter, and after hearing the evidence, held that the identification was admissible. Roberts gave testimony that he could positively identify the appellant based on his observations of July, 1968, and being an experienced agent knew he would be called on at a later date to identify the person from whom he made the purchase. He had seen the appellant on three successive days. There was no abuse of discretion for the court to hold that the in-court identification was not tainted. See: Smith v. State, Tex.Cr.App., 459 S.W.2d 642; Lucas v. State, Tex.Cr. App., 444 S.W.2d 638.

Appellant's first ground of error is overruled.

■ Appellant's second ground of error complains of the trial court's refusal to grant a mistrial when Roberts stated the cause of the injury to his eye. This testimony was as follows:

"Q Mr. Roberts, I notice you're wearing sun glasses there on the witness stand. Would you tell us the reason for that, please?

"A Yes, sir. My left eye was severely injured in a narcotics raid in February.

"Q That was here in Texas?

"A Yes, sir.

"MR. GREEN: Your Honor, I'm going to object to this and make a Motion for a new trial—I mean a mistrial at this time.

"THE COURT: Sustained. Disregard about the injury. Overruled as to the mistrial."

Appellant cites several cases [1] in which this Court held that irrelevant testimony, the only effect of which was to inflame the minds of the jury, and which linked the defendant to the inflammatory testimony, was prejudicial. In this case, however, there was no connection made between the ap-

---

1. Elizondo v. State, 130 Tex.Cr.R. 393, 94 S.W.2d 457, 458; Fowler v. State, 171 Tex.Cr.R. 600, 352 S.W.2d 838;

Chatterfield v. State, Tex.Cr.App., 436 S.W.2d 146.

pellant and the challenged testimony. On the contrary, it was perfectly clear that the appellant had nothing to do with that incident, and the admonition to the jury cured any error presented. The rule, as stated in White v. State, Tex.Cr.App., 444 S.W.2d 921, is: "An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." The question and answer here is not that type of "extreme case," and appellant received adequate relief from the trial court.

The appellant's second ground of error is overruled.

■ Appellant's third ground of error complains of the evidence that the appellant offered to sell Roberts some LSD. The offer to sell both drugs was part of the same transaction, and all of the facts and circumstances of the commission of the offense are admissible. Dillard v. State, Tex.Cr.App., 434 S.W.2d 126; Lassere v. State, Tex.Cr.App., 458 S.W.2d 81.

Appellant's fourth through ninth grounds of error concern the prosecutor's arguments.

■ The fourth ground refers to these remarks on the State's opening argument: "Ladies and Gentlemen, The State has proved its case. We are entitled and Dallas County is entitled to a verdict of guilty." This statement amounts to a plea for a conviction; there was no mention of public opinion or what the people of Dallas County want or expect the jury to do. Cox v. State, 157 Tex.Cr.R. 134, 247 S.W.2d 262; and Pennington v. State, 171 Tex.Cr.R. 130, 345 S.W.2d 527, are clearly distinguish-

able because of this, and any comparison with those cases is without merit.

The fifth ground refers to the statement: "If you want justice done in your county, you can say so by your verdict * * *" This injects no new fact into the case.

■ The seventh ground complains of the following:

"MR. GREEN: I object to that remark, 'If you want to do justice for your County.' I believe that's reversible error and ask for a mistrial.

"THE COURT: Overrule you on both of them.

"MR. ERWIN: Maybe he doesn't want justice done.

"MR. GREEN: I object to that, what I want and don't want."

The remark, though improper, does not present such error as would harm the appellant.

■ The sixth ground refers to the following portion of the State's final argument:

"Ladies and gentlemen, when you see a person three days running and that is a person you are going to pinpoint your identification of because you know maybe not the next week because you can't arrest him right then—it might be months before you can clear up enough of it to where you could go ahead and round up all the people involved, but you know that you're going to look at that man close enough to be able to identify him whether he has got a moustache or whether he's got a goatee. Mr. Green tried to make it even better. He wanted to put him in sunglasses. Mr. Green would have had him out there with a sack over his head if he could have. That's not the case."

The appellant's objection was sustained, but the court overruled the motion for

mistrial. This was not a personal attack on the defense counsel. The court's sustaining of the request to have the jury disregard the statement cured any error.

The eighth ground of error concerns the following portion of the State's final argument:

" * * * Mr. Green isn't satisfied with the way the chemist testified. The man only had what, thirteen years of experience. I'm sure if we could have have brought you a ninety year old chemist with sixty years of experience Mr. Green would have liked it better."

This error, if any, was clearly harmless.

The ninth ground of error complains of the following argument:

" * * * Now, we talk about probation and whether or not a person deserves it, because the law says it's your discretion. Well, it seems amazing that a man that's been on the earth for twenty-two years and who has lived in a city the size of Dallas, Texas with over a million people, it seems amazing that not one person could mount that witness stand and give you one reason to probate this man. Have you heard from one person to tell you that he's worth it? No. Not family, not friends, not minister or preacher, or whatever have you, because he's not worth it."

Art. 37.07, of the Vernon's Ann. Code of Criminal Procedure provides that at the punishment stage of the trial, "evidence may be offered by the State and the defendant as to the prior criminal record of the defendant, his general reputation and his character." The prosecutor's argument, then, was a fair comment on the evidence adduced at the punishment stage of the trial.

Appellant's tenth ground of error alleges that it was fundamental error for the court not to submit the appellant's "defense of mistaken identity" to the jury in the court's charge.

No objection to the charge was made at the trial court, and no requested charge was submitted. Under Art. 36.14 and 36.15, V.A.C.C.P., no error is shown. Martinez v. State, Tex.Cr.App., 448 S.W.2d 488; Burleson v. State, Tex.Cr.App., 449 S.W.2d 252.

Appellant's tenth ground of error is overruled.

There being no reversible error, the judgment is affirmed..