Charles COLEMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 47999.

Court of Criminal Appeals of Texas.

March 6, 1974.

One of the terms and conditions of his probation was that he "commit no offense against the laws of this State or any other State or the United States." On September 19, 1972, the State filed a motion to revoke appellant's probation alleging that on or about August 12, 1972, the appellant broke into the home of Mrs. Ruby Waters without her consent and with the intent to commit theft. The appellant's probation was revoked and he appealed.

Appellant's initial complaint is that the trial court abused its discretion in revoking his probation because the complaining witness, Ruby Waters, was allowed to make an in-court identification of appellant which was based upon a tainted out-of-court photographic display.

A review of the record reveals that the complaining witness, Ruby Waters, testified on cross-examination that approximately three or four days after the burglary an unidentified police officer brought two photographs to her home and asked her if she could identify the burglar from the photographs. She further testified that she believed both photographs were of the appellant but she was unable to unequivocally state that the man in the pictures was, in fact, the man who had burglarized her home some four days prior. Also, she testified that she knew that the man in the pictures was at that time already in custody. Finally, defense counsel elicited from Mrs. Waters the following testimony:

"Q (Defense Counsel): All right. Now, then, I am sure that picture was very valuable to you in helping you identify the person that was in your house that night, wasn't it?

"A (Mrs. Waters): Yes, sir.

"Q Now, then, thinking back would you say that your identification of Mr. Coleman was based on that picture?

"A I sure do.

"Q. In other words, you looked at that picture and identified that picture and

D. Bradley Hutchison (Court appointed), Paris, for appellant.

Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

JACKSON, Commissioner.

This is an appeal from an order revoking probation.

The record reflects that in January, 1972, appellant was convicted of burglary and assessed a five (5) year sentence. Imposition of sentence was suspended, however, and the appellant placed on probation.

**880**

you got that picture in your mind and when you came here in the courthouse today you were thinking of that picture.

"A I sure was.

"Q When you identified Mr. Coleman?

"A I sure was. Yes, sir.

"Q Do you think it would have been possible that you could have identified him without ever having see (sic) that picture?

"A Now, I am not going to say I could because I never knowed (sic) the children."

■ In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Court stated:

". . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972–1973, 18 L.Ed.2d 1199, and with decisions of other courts on the question of identification by photograph."

See also White v. State, Tex.Cr.App., 496 S.W.2d 642; Dunlap v. State, Tex.Cr.App., 477 S.W.2d 605, and Ward v. State, Tex. Cr.App., 474 S.W.2d 471. Under the holding in Simmons, therefore, the photographic display must be "impermissibly suggestive" and "give rise to a substantial likelihood of misidentification." White v. State, supra; United States v. Sutherland, 5 Cir., 428 F.2d 1152.

■ Here, the only evidence regarding this photographic display was the testimony given by the complaining witness during cross-examination by counsel for the appellant. Her testimony was that only two pictures were shown to her and that she believed both were of the appellant. Further, her testimony suggested that the policeman who displayed the photos to her may have mentioned that the appellant was already in custody as reflected in the following colloquy:

"Q (Appellant's Counsel): Now, from the time that this alleged burglary took place until the time that the police came out to your house with these pictures how long was the interval there? How long was it from the time the burglary took place until they brought the pictures out there to you?

"A (Mrs. Waters): They had him up there in jail when he brought the pictures out there for me to see."

Taking this fact into consideration in conjunction with the fact that the two photographs were apparently both of appellant, we hold that the photographic display was, in fact, "impermissibly suggestive" and was "so defective as to indicate or suggest the photograph which the witness is to identify." See Ward v. State, Tex.Cr. App., 474 S.W.2d 471.

In regard to the second half of the Simmons' test, we further hold that there is a "substantial likelihood of irreparable misidentification" in view of Mrs. Waters' testimony that she could not have identified appellant without the aid of the photographs and that her in-court identification of appellant was based upon the photos shown to her previously.

We hold that the in-court identification of appellant by Mrs. Waters was, in fact, tainted by the out-of-court photographic display and that the trial court erred in failing to strike the identification testimony.

■ We note that what is purported to be a voluntary statement of the appellant was introduced into evidence by the State.

This statement, excluding the printed recitations, reads as follows:

> "My name is Charles Coleman. I live at 403 Booker T. Washington Homes in Paris, Texas. On August 12, 1972, me, Roy Stevens, and James Ricksman went to 1151 Fitzhugh. I picked the lock on the screen and went in. I heard a noise in the house and a lady come towards me and I jumped out the window . . . This happened early in the morning.
>
> "I can read and write nad (sic) have read and had read to me this statement and it is true and correct.
>
> "This happened in Paris, Lamar County, Texas.
>
> "/s/ Charles Coleman
>
> "Witness /s/ Terry Cochran"

If this statement were to corroborate the facts alleged in the State's motion to revoke, the previously considered tainted identification might well have been harmless error. However, an analysis of the statement reveals that the address which appellant admits having entered (1151 Fitzhugh) is not the address of Mrs. Waters where the alleged burglary occurred (1161 Fitzhugh); that appellant admits a break-in on August 12, 1972, whereas Mrs. Waters testified that her home was burglarized on January 13, 1972. Further, in regard to the events of that evening, appellant's alleged statement recites that he escaped by way of the window he entered through, whereas Mrs. Waters testified that she let the burglar out by way of the door. In short, there are many inconsistencies between the alleged confession and the proof adduced at the hearing and, therefore, this statement could not be used to connect appellant with the burglary alleged.

■ Without the eyewitness identification of appellant which we have held inadmissible and considering the impotency of the alleged voluntary statement introduced into evidence, we find that there was no evidence upon which the trial court could have founded its decision and, therefore, hold that the court abused its discretion in revoking appellant's probation.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

MORRISON and ODOM, JJ., concur. in the results.

ONION, Presiding Judge (concurring).

I feel compelled to state why I concur in the reversal.

The motion to revoke probation alleged that on or about August 12, 1972, appellant broke into the home of Ruby Waters without her consent and with the intent to commit theft. The evidence showed such house was located at *1161 Fitzhugh* in Paris.

The uncorroborated confession reads as follows:

> "My name is Charles Coleman. I live at 403 Booker T. Washington Homes in Paris, Texas. On August 12, 1972, me, Roy Stevens, and James Ricksman went to *1151 Fitzhugh.* I picked the lock on the screen and went in. I heard a noise in the house and a lady come towards me and I jumped out the window. * * * * This happened early in the morning.
>
> "I can read and write nad (sic) have read and had read to me this statement and it is true and correct.
>
> "This happened in Paris, Lamar County, Texas.
>
> "/s/ Charles Coleman"

(Emphasis supplied).

It is true that this court has held on a number of occasions that an uncorroborated confession of a probationer constitutes

sufficient evidence for the court to revoke probation. See Smith v. State, 160 Tex. Cr.R. 438, 272 S.W.2d 104, (1954); Hulsey v. State, 447 S.W.2d 165 (Tex.Cr.App. 1969); Tollett v. State, 456 S.W.2d 909 (Tex.Cr.App.1970); Campbell v. State, 456 S.W.2d 918 (Tex.Cr.App.1970); De Leon v. State, 466 S.W.2d 573 (Tex.Cr.App. 1971); Hicks v. State, 476 S.W.2d 671 (Tex.Cr.App.1972).

An examination of these cases indicates that the confessions involved completely met the allegations of the revocation motions, unlike the instant case. Surely the rule in those cases was never intended to extend to cases like the present one.

If the confession does not, standing alone sustain the allegations in the revocation motion, is there other evidence to corroborate the confession?

Ruby Waters testified she lived at 1161 Fitzhugh, not 1151 Fitzhugh, and on direct examination testified the burglary occurred on January 13, 1972, rather than August 12, 1972, as alleged. Later, in response to the court's inquiry, she testified the burglary occurred in 1972 when "it was turning Spring." On cross-examination she related it "must have been along about April the 4th or the 5th." She further testified she did not know the man who broke into her house, but recalled letting the man out the door after her confrontation with him. This was in sharp contrast to the statement in the confession as to the manner of exit.

The record further shows that shortly after the burglary an officer brought two photographs to her home for her to identify, and she believed both photographs were those of the appellant. She knew at the time the man in the photographs was in jail. When asked what the unidentified officer who brought the photographs to her said, she replied: "He said that is the boy."

In her other testimony set out in the majority opinion, she testified that her in-court identification was based on the picture or pictures and she was "not going to say" she could have identified him without having seen the pictures.

It is clear, as pointed out in the majority opinion, that her in-court identification was tainted by the photographic display.

For the reasons stated, I concur.