Gregory TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–91–00028–CR.

Court of Appeals of Texas, El Paso.

March 17, 1993.

Bruce J. Ponder, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for the State.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

Appellant was convicted by a jury of the offenses of robbery (trial court cause no. 56978–41, our cause no. 08–91–00028–CR) and burglary (trial court cause no. 56979–41, our cause no. 08–91–00029–CR), both enhanced by allegations of a prior felony conviction. The court assessed punishment at 24 years' imprisonment for the robbery and 25 years for the burglary. In this appeal from the robbery conviction, Appellant complains in three points of error that the trial court erred when it overruled: (1) his motion to exclude the identification of Appellant because of State conduct that made the identification process impermissibly suggestive, (2) his objection to evidence of extraneous criminal conduct, and (3) his motion for continuance because of the absence of a material witness. We affirm.

In the early morning hours of October 26, 1989, a person remained concealed in the Twins Inn bar after closing and proceeded to burglarize the establishment. During the commission of that offense, the burglar noticed Francis Roche asleep inside the bar and immediately began to strike him over the head with an object or objects severely wounding his head and apparently knocking him unconscious. Roche regained consciousness and was able to get a quick view of the burglar's face, build and clothing before he was forced at what he believed to be gunpoint to hand over what little money he had and to lie on the floor with his jacket over his head while the burglar completed burglarizing the bar and left.

On the day of the offense, after the police arrived but before being taken to the hospital, Roche described the burglar to Officer Robles as a tall black male of medium build, wearing an orange or red windbreaker jacket and blue jeans. On November 2, 1989, Roche went to the El Paso Police Department and met with Detective Ramirez for the purpose of viewing a photo spread lineup. Roche identified two individuals, out of five in the lineup, as his possible assailant. Approximately six months later, Roche viewed the same photo spread in the District Attorney's office, and was able to positively identify Appellant.

In addition to Roche's identification of Appellant at the scene, Appellant's fingerprints were positively identified on a "penny jar" normally kept by the cash register but found on the floor behind the jukebox and on one of several bloody, smashed trophy bases found on the floor.

In his first point of error, Appellant asserts that the court erred by allowing Roche to make an in-court identification because it was allegedly based solely on an out-of-court identification that was impermissibly suggestive and thus, a violation of due process.

In *Jimenez v. State*, 787 S.W.2d 516, 519–20 (Tex.App.—El Paso 1990, no writ), this Court outlined the two-pronged analysis to be employed when addressing a challenge to suggestive or tainted identification procedures. A defendant has the burden of showing by clear and convincing evidence that the trial identification was irreparably tainted by impermissibly suggestive pretrial identification procedures. *See also Herrera v. State*, 682 S.W.2d 313, 318 (Tex.Crim.App.1984). Allowing an in-court identification is a violation of due process if the reviewing tribunal finds the existence of an irreparable taint at the pretrial level. *Id.; Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). It must be determined first whether the pretrial procedure was impermissibly suggestive and second, whether there was a resulting substantial likelihood of misidentification. *Jimenez*, 787 S.W.2d at 519. It is the latter danger that is critical and directly implicates the defendant's due process rights.

Appellant claims several factors caused the pretrial identification procedure to rise to the level of being impermissibly suggestive. One of Appellant's complaints is that his photograph was larger than the others used in the lineup, and therefore impermissibly suggestive. Having re-

viewed the photographs, the difference in size is confined to the height of the photo, not the image of Appellant.[1] Moreover, when Roche first viewed the array on November 2, 1989, the photographs were displayed in a folder that had squares cut out, so that each photograph was uniformly presented. Accordingly, we conclude that any variance in size did not impermissibly suggest Appellant as the perpetrator.

■ Next, Appellant raises the fact that Roche was shown the same array on two separate occasions, the first time on November 2, several days after the robbery and burglary and the second time, in May of 1990 at a pretrial. Appellant argues that this practice was impermissibly suggestive and done in an effort to "pollute" the witness's mind. The record indicates that at the first photographic lineup, the witness viewed five similar photos and selected two which resembled the assailant.[2] At the time, Roche had just gotten out of the hospital and testified that his head injuries were fairly severe and he was having terrific headaches which affected his ability to make a positive identification. There is nothing in the record to indicate that this process was in any way suggestive or that the level of involvement by Detective Ramirez was excessive.[3]

Appellant also claims that the second photographic lineup was impermissible because the same array was used and the photos were displayed in the same se-

quence. Appellant cites *Coleman v. State*, 505 S.W.2d 878, 880 (Tex.Crim.App.1974), for the proposition that if a witness bases his in-court identification on the viewing of a photo spread, the process becomes tainted to the extent of irreparable misidentification. *Coleman* is clearly distinguishable.[4] Absent a claim that the second viewing was in itself suggestive, the practice of allowing a witness to review an array is not per se impermissible. In *Glover v. State*, 787 S.W.2d 544, 546 (Tex. App.—Dallas 1990), *aff'd on other grounds*, 825 S.W.2d 127 (Tex.Crim.App. 1992), the Court held that the use of two photographic lineups and one live lineup, was not unnecessarily suggestive. *Id.* Since Roche, at the time of the first viewing, was still suffering from recently inflicted severe head injuries, it was not unreasonable to allow him a second opportunity to identify his assailant, nor does it stretch the bounds of reasonableness that Roche was able to positively identify Appellant during the second viewing.[5] Appellant has failed to show that the two pretrial photo lineup viewings were impermissibly suggestive.

■ Even if the photo lineup procedures were unduly suggestive, the subsequent in-court identification may, nevertheless, be permitted if the State demonstrates by clear and convincing evidence that the questionable pretrial procedures did not taint the in-court identification. In assess-

1. The photograph is approximately one inch taller than the others in the array; however, Appellant's photograph is the same width as the others.

2. Roche did indicate to Detective Ramirez that photograph number five, that of the Appellant, most closely resembled the assailant.

3. The only thing Detective Ramirez told Roche during the lineup was that he should examine each picture closely and see if he could recognize any of the individuals. Roche was not told that one of the photographs was of a suspect.

4. In *Coleman,* the operative fact, resulting in the finding of an impermissible photographic lineup, was the use of only two photographs in the array. *Coleman,* 505 S.W.2d at 880. Moreover, both photographs were of the accused. Moreover, the policeman who displayed the photos may have indicated that the suspect was already

in jail. *Id. But see, Cantu v. State,* 738 S.W.2d 249, 251–52 (Tex.Crim.App.1987) wherein the Court found that the showing of several photographic displays to the same witness, each display containing the defendant's photo, was a suggestive procedure. *Id.* However, the Court found that the totality of the circumstances of the case did not give rise to a "substantial likelihood of irreparable misidentification." *Id.*

5. Roche was able to identify two photographs as possible suspects during the first viewing. Even if a witness cannot identify the defendant during an initial photographic lineup, subsequent positive identifications merely go to the weight of the evidence, not the admissibility. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

ing whether the State has established by clear and convincing evidence that the in-court identification was based upon observations at the time of the offense rather than upon impermissibly suggestive pre-trial procedures, the Court should consider, on a case by case basis, such relevant factors as: (1) the witness's prior opportunity to observe the accused; (2) any discrepancy between the witness's earlier descriptions and the accused's actual appearance; (3) whether the witness has previously identified some other person; (4) prior identifications of the accused by the witness; (5) failure of the witness to identify the accused prior to the suggestive procedure; and (6) lapse of time between the offense and the various identifications. *Herrera*, 682 S.W.2d at 318; *Jimenez*, 787 S.W.2d at 520.[6]

■ With reference to the first factor, Roche testified that before being struck on the head, he had approximately 30–40 seconds to view the perpetrator. It has been held that only viewing a perpetrator for 35–45 seconds is sufficient, even though the 35–45 seconds was divided into intervals. *Pinkston v. State*, 744 S.W.2d 329, 334 (Tex.App.—Houston [1st Dist.] 1988, no writ). There is also evidence in the record that Roche had seen Appellant at the Twin's Inn at least one time prior to the robbery. This factor should go to the weight of the evidence, not the admissibility. This evidence militates against the existence of misidentification.

Second, we must assess any discrepancies between the witness's earlier descriptions of the perpetrator and the Appellant's actual appearance. Officer Robles testified that the description Roche provided was that of a black male wearing a red or orange windbreaker and blue jeans. Roche apparently told the officer that the perpetrator was approximately six foot tall, medium build and 30 years old. This physical description closely matched the description

of a male whom Officer Robles had stopped and questioned in the same area the night before the robbery. The individual Officer Robles had stopped the night prior to the robbery, was the Appellant.[7]

The third factor to be considered is whether the witness has previously identified some other individual. The only evidence of an "additional" identification was Roche's selection of two photographs during the first photographic lineup in November. Unlike *Jimenez*, Roche did not specifically reject Appellant's photograph. Instead, at the first lineup, Roche identified Appellant and another individual as closely resembling his assailant but did not want to narrow it to one until he was positive he "was picking the right one." When Roche viewed the same array a second time, he was able to positively eliminate the additional selection leaving Appellant as the only suspect. This process, if anything, suggests a high level of reliability because the witness correctly selected Appellant in both viewings. Had Roche not selected Appellant as a possible suspect until the second viewing, a stronger inference of misidentification would exist. Accordingly, this point weighs in favor of a reliable identification.

The fourth and fifth factors consider the instances, if any, of the witness's prior identifications or failure to identify the accused. As discussed above, the witness's only prior opportunity to identify the assailant occurred during the first photographic display in November of 1989. While Roche did not positively identify Appellant during the first viewing, we cannot say that the selection of two photographs, one of which was Appellant, rises to the level of failure to identify. These factors also weigh in the favor of a reliable identification.

Finally, the sixth factor of *Jimenez* requires an evaluation of the lapsed time between the offense and each identification procedure. Roche participated in the first

**6.** This test was enunciated in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and followed in *Jackson v. State*, 657 S.W.2d 123 (Tex.Crim.App.1983).

**7.** In *Sanchez v. State*, 705 S.W.2d 304, 305 (Tex. App.—San Antonio 1986, no writ), the Court held that a description of a perpetrator's clothing only, goes to the weight to be given the evidence, not the admissibility. *Id.*

photographic lineup within seven days after the offenses were committed and at a time when he was still suffering from the effects of his injuries. In *Glover*, the lapse of five days between the incident and the first photographic lineup, was not considered excessive. *Glover*, 787 S.W.2d at 547. We hold that under the circumstances, the lapse of seven days is not excessive. Nor is the lapse of some six months between the first and second photo lineups excessive. The lapse of time goes to the weight of the evidence, not its admissibility. Having weighed all six factors, we conclude that there was no substantial likelihood of misidentification. Accordingly, we overrule Appellant's first point of error.[8]

Appellant's second point of error claims that the court erroneously admitted evidence of extraneous acts. Officer Robles testified that he had "checked out" the Appellant the night before the robbery near the scene of the robbery. Appellant did not object until many of the particulars regarding the officer's stop of Appellant, were disclosed.[9] Objections to inadmissible evidence must come at the earliest opportunity. *Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled to the extent in conflict with Heitman v. State*, 815 S.W.2d 681, 682, 690 (Tex.Crim.App.1991). The earliest possible opportunity arises "as soon as the ground of objection becomes apparent." *Id.* Appellant failed to object timely and therefore waived any objections to the introduction of this testimony. Appellant's second point of error is overruled.

Appellant's final point of error charges the trial court with an abuse of discretion for failing to grant his motion for continuance. Appellant submitted two pretrial motions for continuance based on the unavailability of a witness, Dora Fernandez

Hernandez. The first motion, filed May 11, 1990, was apparently granted (the record is unclear as to the disposition of the first motion) and the case reset for trial on June 25, 1990. The second motion for continuance was filed on the latter date just before the trial began and was denied.

An investigator for Appellant had interviewed the witness and claimed that the witness would testify that on the morning and at the approximate time of the offenses at the Twins Inn bar, she saw a black male, not the Appellant whom she knew, leaving the robbery scene. Both motions were supported by the affidavits of Appellant's attorney, who had two subpoenas issued and returned unserved, and an investigator appointed to assist in the defense. In the case of the first motion, the supporting affidavits tended to show due diligence. The affidavits attending the second motion were virtual mirror copies of the previous affidavits with the exception that the investigator's affidavit added that he had "recently (on Friday, June 22, 1990) learned that Mrs. Hernandez may have moved to Del Rio, Texas, to reconcile with her husband. I am pursuing that lead." Appellant's investigator was allowed to testify at trial, out of the presence of the jury and over the State's hearsay objection, regarding the disclosures the unavailable witness had made to him and concerning his efforts to locate her. On the latter subject, the investigator stated that at the time he talked to her (February 20, 1990), all he got for a home address was "Juarez, Mexico." When she failed to show up at his office, he made inquiry and heard she had left El Paso and was in Del Rio. He didn't inquire about her location anymore after that.

 The disposition of a second motion for continuance rests within the sound discretion of the trial court and the court's

---

8. Even assuming, arguendo, there was evidence of an improper pretrial identification procedure, the record reflects that the in-court identification by Roche was based solely on his observation of the appellant during the robbery. In *Jackson v. State*, 657 S.W.2d 123, 130 (Tex.Crim. App.1983), the Court concluded that "even where the pre-trial [sic] identification procedure is impermissibly suggestive, in-court testimony

of an identification witness will still be admissible as long as the record clearly reveals that the witness' [sic] prior observation of the accused was sufficient to serve as an independent origin for the in-court identification." *Id.*

9. Approximately fourteen questions and answers transpired before the objection.

refusal to grant the motion will not be grounds for reversal unless it is made to appear that the court abused such discretion. *Adams v. State,* 385 S.W.2d 857, 859 (Tex.Crim.App.1965). The trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. *Kelley v. State,* 824 S.W.2d 568, 574 (Tex.Crim.App.1992); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (on own motion for rehearing).

■ Although Appellant's motions for continuance met the requirements set forth in Tex.Code Crim.Pro.Ann. arts. 29.06 and 29.07 (Vernon 1989), including statements of due diligence in attempting to procure the witness's attendance and in his second motion, that the testimony could not be obtained from any other source known to him and that he had a reasonable expectation of obtaining the testimony of the witness at the next term of court, neither the allegations of the second motion nor the supporting affidavits set forth facts showing any real effort to locate the missing witness between the filing of the first motion and the second motion. Moreover, the investigator's testimony indicated that after he learned that she had left El Paso and gone to Del Rio, he made no further inquiries about her. This is not a showing of due diligence or a showing that the Appellant had a reasonable expectation that he would procure the missing witness at the next term of court and the trial court was acting "within the zone of reasonable disagreement" in denying the motion. *Alvarez v. State,* 158 Tex.Crim. 1, 252 S.W.2d 467 (1952); *Beckwith v. State,* 104 Tex. Crim. 467, 284 S.W. 546 (1926). Appellant's third point of error is overruled.

We affirm the judgment of the trial court.