

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-11-00422-CR

Joel Julian **CASTILLO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-10190
Honorable Angus K. McGinty, Judge Presiding

Opinion by:   Marialyn Barnard, Justice
Concurring and Dissenting Opinion by:  Catherine Stone, Chief Justice

Sitting:      Catherine Stone, Chief Justice
              Karen Angelini, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  March 1, 2013

AFFIRMED

A jury found appellant Joel Julian Castillo guilty of the attempted capital murder of Officer Jeremy Swindells, and he was sentenced to a twenty-year term in the Texas Department of Criminal Justice—Institutional Division.  On appeal, Castillo argues: (1) the trial court erred in allowing the in-court identification of Castillo by Officer Swindells; (2) the trial court erred in admitting evidence of an extraneous offense; (3) the trial court erred in denying Castillo's request to present testimony about Officer Swindells's specific acts of misconduct and cross-examine him on these incidents; (4) the State presented false testimony that affected the jury's

verdict; and (5) the evidence was legally insufficient to support his conviction. We affirm the trial court's judgment.

## BACKGROUND

The morning Officer Jeremy Swindells was shot, Steve Sondley returned home to find his black truck missing and his home burglarized. Sondley called 911. Officer Swindells was dispatched to Sondley's home to take a report. When he arrived, Sondley met the officer in the driveway where they discussed the burglary. While Officer Swindells was getting some forms from his vehicle, Sondley saw his black pickup truck heading down the street. Officer Swindells got in his patrol car and pursued the pickup.

At some point during the chase, the driver of the truck put it into reverse and struck Officer Swindells's bumper. The driver then got out of the moving truck, which continued moving until it hit a tree. Officer Swindells saw the driver of the vehicle, whom he described as a white, heavyset male with red hair.[1] The driver started running through the streets and into the neighborhood. Officer Swindells pursued the driver on foot. The driver ran through a gate into the backyard of a house, ran along the fence line and behind a shed in the back. Officer Swindells testified he yelled for the suspect to stop but he continued to run, climbing over the fence behind the shed into the next backyard. Officer Swindells jumped the fence and continued to chase the driver into the next yard where he appeared to be looking for the gate. When the driver was unable to climb the fence, Officer Swindells testified the driver took a modified fighting stance with his fists drawn up.

Officer Swindells ordered the driver to get on the ground. However, the driver did not comply, and according to the officer, seemed ready to fight. Officer Swindells testified that when the driver came toward him, Officer Swindells drew his baton and struck him in the knee

---

[1] The driver of the vehicle was later identified as John Otten, brother of appellant Castillo.

to get him on the ground. The driver then tried to grab Officer Swindells's firearm, so the officer struck him in the upper arm.

At one point during the struggle, the driver yanked the baton away from Officer Swindells. Officer Swindells pulled his firearm and told the suspect to drop the baton, but the driver started to move forward. Officer Swindells fired his weapon, striking the driver in the chest. The driver immediately fell to the ground and died. Once Officer Swindells was sure there was no further threat, he radioed for EMS and notified his supervisors of the shooting.

The homeowner of the yard came out and asked if everything was okay. Officer Swindells told him to stay where he was because it was a crime scene. While Officer Swindells and the homeowner were exchanging information about the address, Officer Swindells heard gunfire. Officer Swindells testified he suddenly felt a sharp pain through his lower left leg. Officer Swindells looked in the direction he thought the shot had come from, and saw an individual on top of the fence pointing a gun at him. At trial, Officer Swindells described the individual on top of the fence as a light-skinned Hispanic male. Officer Swindells testified he was paying more attention to the gun than he was to the clothing the suspect was wearing. Officer Swindells identified himself as a police officer, but the suspect shot again, hitting Officer Swindells in the left thigh. Officer Swindells raised his weapon and started shooting in the suspect's direction while trying to get out of the line of fire.

Once Officer Swindells found cover, he had to locate the suspect to make sure he was not coming into the yard. Officer Swindells testified he saw the suspect kneeling over the driver who had been shot by Officer Swindells. Officer Swindells testified he told the suspect to get on the ground, but the suspect raised his gun and pointed it at Officer Swindells. Officer Swindells immediately fired at him but missed. The suspect jumped up and ran back toward the fence.

Officer Swindells testified he fired again and missed a second time. When the suspect was almost to the fence, Officer Swindells fired and this time the suspect fell and dropped the gun. Officer Swindells testified the suspect attempted to pick up the gun and began to climb over the fence, so Officer Swindells fired again but did not know if he hit the suspect. After the suspect climbed over the fence, Officer Swindells radioed in a description of the suspect and the direction he was traveling.[2] Officer Swindells also informed other officers that he thought the suspect had been shot and might still be armed.

Shortly after the incident, Officer Juan Campacos and an evidence technician followed a blood trail from the backyard. The blood trail led them to Castillo, who was found hiding nearby beneath some stairs. Castillo was arrested and charged with attempted capital murder. The investigation showed Castillo had no gunshot residue on his hands, and his alleged weapon was never found.

Three weeks after the shooting incident, Officer Swindells gave a statement to police about the incident. Allegedly, Officer Swindells was never asked to identify the shooter, and did not give a description of the shooter in his statement. However, Officer Swindells later identified Castillo in court as the individual who shot him.

Officer Swindells admitted he saw Castillo on at least two separate instances after the shooting incident, but before he identified him in open court. First, Officer Swindells testified he saw Castillo in the hallway before Castillo's bond hearing. The officer stated Castillo was wearing an orange jumpsuit and was handcuffed to other prisoners. Officer Swindells said he commented to an investigator, George Saidler with the District Attorney's Office, that he recognized Castillo. Officer Swindells also testified that about six months after the shooting, he

---

[2] There is no evidence or independent corroboration that Officer Swindells gave a description of the suspect over the radio, or what that description might have been.

searched for Castillo's name on the police database to see the status of the case and looked at Castillo's booking photo.

Lawrence Hunter, the homeowner of the backyard where the shooting took place, also testified at trial. Hunter testified he was talking to Officer Swindells when he saw a man on top of the fence firing at the officer. He identified the man as "medium height" and "kind of slender." Other witnesses, including neighbors around the scene of the incident, also testified at trial. Much of the testimony about the suspect's appearance differed.

## LEGAL SUFFICIENCY

We begin our analysis with Castillo's legal sufficiency challenge. Castillo contends the evidence is legally insufficient to support his conviction because, among other things, Officer Swindells's testimony is inconsistent and is not supported by scientific evidence, and the weapon Castillo allegedly used to shoot at the officer was never found.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence in a criminal case, an appellate court uses the standard established by the United States Supreme Court in *Jackson v. Virginia*. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *Mayberry v. State,* 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd). In reviewing a legal sufficiency claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mayberry*, 351 S.W.3d at 509 (citing *Jackson*, 443 U.S. at 319). We must therefore defer to the jury's weighing of the evidence, resolution of conflicts in the testimony, and assessment of credibility. *Brooks*, 323 S.W.3d at 899; *see also Jackson*, 443 U.S. at 319 (taking into account trier of fact's duty to resolve

conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts).

This standard requires an appellate court resolve any inconsistencies in the testimony in favor of the verdict. *Gonzales v. State*, 330 S.W.3d 691, 694 (Tex. App.—San Antonio 2010, no pet.) (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). Thus, in analyzing the legal sufficiency of the evidence, this court must determine whether the necessary inferences are reasonable based on the combined force of the evidence, direct and circumstantial, when viewed in the light most favorable to the verdict. *Mayberry*, 351 S.W.3d at 509 (citing *Clayton v. State*, 235 S.W.3d 772, 779 (Tex. Crim. App. 2007)); *see also Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (holding standard of review is same for both direct and circumstantial cases).

Moreover, an appellate court must remain mindful not to reweigh the evidence or substitute its judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and the jury may accept or reject all or any part of a witness's testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). The jury maintains the power to draw reasonable inferences from basic facts to ultimate facts; and it is their sole province to reconcile any evidentiary conflicts. *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.—San Antonio 1999, no pet.); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

The State may prove its case by direct or circumstantial evidence so long as it meets its burden of proving each of the required elements of the charged offense beyond a reasonable doubt. *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.—San Antonio 1998, no pet.) (citing *Jackson*, 443 U.S. at 319). This is applicable to proving the accused was the perpetrator of the

criminal offense.  *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

*Analysis*

Castillo was charged with and convicted of attempted capital murder.  Accordingly, the State was required to present evidence establishing beyond a reasonable doubt that Castillo intentionally or knowingly attempted to cause the death of Officer Swindells, who was acting in the lawful discharge of an official duty, and that Castillo knew Officer Swindells was a peace officer.  *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03 (West 2011).  A person is guilty of an attempt to commit a crime if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.  *Id.* § 15.01(a).

As detailed above, Officer Swindells testified he was in full uniform investigating the burglary of a home and vehicle when the homeowner recognized his vehicle heading down the street.  Officer Swindells got in his patrol car and engaged in the pursuit of the driver of the stolen vehicle.  The chase led the officer into a backyard, where he struggled with the driver and eventually shot him.  After the shooting, and while Officer Swindells was getting information from the homeowner, the officer heard gunfire and felt a sharp pain in his leg.  Officer Swindells testified he saw the suspect on top of the fence pointing at him, and moments later kneeling in front of the body of the driver.  Officer Swindells identified Castillo in court as the suspect who shot him.  The homeowner also testified he saw the suspect on the fence firing at Officer Swindells.  Although the homeowner was unable to clearly identify the shooter, he described the suspect as being of medium height and slender and described the weapon he was carrying as a revolver.

Officer Swindells gave a description of the suspect and the direction he had gone over the police radio. Officer Swindells also informed other officers that he thought the suspect had been shot and might still be armed. Shortly after the incident, Officer Campacos and an evidence technician followed a blood trail from the backyard. The blood trail led them to Castillo, who was found bleeding and hiding nearby beneath some stairs.

Castillo alleges the evidence was legally insufficient because no rational jury would have believed Castillo shot Officer Swindells, in part because the officer was not credible. However, this court should defer to the factfinder's evaluation of the credibility of the evidence, and should not substitute its judgment for that of the jury. *King*, 29 S.W.3d at 562. The jury is the exclusive judge of the credibility of the witnesses and the weight given to their testimony. *Lancon*, 253 S.W.3d at 707.

Furthermore, Castillo argues the evidence was legally insufficient to support his conviction because the alleged weapon he used to shoot Officer Swindells was never found. The State may prove its case by direct or circumstantial evidence so long as it meets its burden of proving each of the required elements of the charged offense beyond a reasonable doubt. *Easley*, 986 S.W.2d at 271. The evidence in the record clearly puts Castillo at the vicinity of the incident, and more importantly, the blood trail from the backyard led to Castillo. Thus, viewing all the evidence in the light most favorable to the jury's verdict, we hold the State met its burden and the evidence was legally sufficient to support Castillo's conviction for the attempted capital murder of Officer Swindells. [3] Accordingly, we overrule Castillo's point of error.

---

[3] We must consider Officer Swindells's in-court identification of Castillo in our legal sufficiency analysis, regardless of any finding that the identification should not have been permitted. *See Gardner v. State*, 306 S.W.3d 274, 284 n. 8 (noting appellate court must consider all evidence, even improperly admitted evidence, when conducting legal sufficiency analysis).

**ADMISSIBILITY OF IN-COURT IDENTIFICATION**

Castillo next argues the trial court erred in allowing the in-court identification of Castillo by Officer Swindells despite an alleged impermissibly suggestive pre-trial identification.

### *Standard of Review*

"An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial [] identification." *Loserth v. State*, 963 S.W.2d 770, 771–72 (Tex. Crim. App. 1998); *Hamilton v. State*, 300 S.W.3d 14, 18 (Tex. App.—San Antonio 2009, pet. ref'd). We apply a two-step analysis when a defendant challenges an in-court identification. *Loserth*, 963 S.W.2d at 772. Considering the totality of the circumstances, we determine whether the pretrial identification procedure was impermissibly suggestive. *Id.* If so, we then determine whether the procedure was so impermissibly suggestive as to give rise to a "very substantial likelihood of irreparable misidentification." *Id.* It is the defendant's burden to establish these elements by clear and convincing evidence. *Hamilton*, 300 S.W.3d at 18; *Loserth v. State*, 985 S.W.2d 536, 543 (Tex. App.—San Antonio 1998, pet. ref'd). If the defendant sustains his burden, the in-court identification is inadmissible unless the State can demonstrate by clear and convincing evidence that the identification was of "independent origin," that is, the record clearly reveals the in-court identification of the suspect was based upon the witness's observations of the suspect prior to the impermissible pretrial identifications. *Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983); *Loserth*, 985 S.W.2d at 543.

Reliability is the critical question in determining the admissibility of the in-court identification. *Loserth*, 963 S.W.2d at 772. Testimony is reliable if the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure. *Loserth*, 985 S.W.2d at 543. In assessing reliability, the following five, non-

exclusive factors enunciated in *Neil v. Biggers*, 409 U.S. 188 (1972), should be weighed against the corrupting effect of the suggestive pretrial procedure:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Loserth*, 963 S.W.2d at 772 (citing *Biggers*, 409 U.S. at 199). The *Biggers* factors are issues of historical fact and should be considered deferentially in the light most favorable to the trial court's ruling. *Id.* at 773. However, we apply a de novo review in weighing the factors against the corrupting effect of the suggestive pretrial procedure, and we need not assign the same weight or significance to the historical facts as the trial court in deciding the ultimate question of reliability. *Id.* at 773–74.

### *Application*

Under the first step in our analysis, Castillo must prove a suggestive and impermissible pretrial identification occurred. The record in this case shows Officer Swindells saw Castillo on at least two separate occasions after the shooting incident but before he identified him in court. Officer Swindells admitted he saw Castillo in the hallway before his bond hearing, wearing an orange jumpsuit and cuffed to other prisoners, and commented to an investigator that he recognized Castillo.

Suggestiveness may be created by the manner in which a pretrial identification occurs. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). In the context of a lineup, for example, while it is not essential that all individuals be identical in appearance, due process calls for individuals in the lineup to roughly fit the description of the suspect. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985). Although there was no lineup in this case, Castillo

argues the pretrial identification at the bond hearing was suggestive because there was no testimony as to what the other prisoners looked like, or whether Castillo was the only person "roughly" matching the description of the suspect. *See id.*

It is Castillo's burden to prove by clear and convincing evidence that an impermissibly suggestive pretrial identification occurred. *Hamilton*, 300 S.W.3d at 18; *Loserth*, 985 S.W.2d at 543. Because Castillo has not presented evidence that he was the only person who resembled the description of the suspect, we hold Castillo has not met his burden to prove that Officer Swindells's pretrial identification of Castillo at the bond hearing was impermissibly suggestive. *See Buxton*, 699 S.W.2d at 216.

However, Officer Swindells also admitted that approximately six months after the shooting incident, he searched for Castillo's name in the police database to check the status of the case, and during the search, he looked at Castillo's booking photo. The use of a lone photograph, without any of the traditional safeguards of a lineup or a photographic array, is inherently suspect and has been uniformly condemned by courts. *Loserth*, 985 S.W.2d at 543–44 (citing *Stovall v. Denno*, 388 U.S. 293, 203 (1967)); *Madden v. State*, 799 S.W.2d 683, 694–95 (Tex. Crim. App. 1990). Thus, we hold Officer Swindells's viewing of Castillo's booking photograph was an impermissibly suggestive procedure, and Castillo satisfied his burden as to this first element.

We now consider whether Castillo established the pretrial identification gave rise to a very substantial likelihood of irreparable misidentification. *See Loserth*, 963 S.W.2d at 772. In conducting this portion of the analysis, we first consider the facts of this case in relation to the *Biggers* factors. We take into account that each of the *Biggers* factors is an issue of historical fact that we view deferentially in a light most favorable to the trial court's ruling. *Id.* at 773. We

also note, however, that we are only required to defer to the trial court's determination of historical facts that are supported by the record. *Id.* at 772.

### Biggers Factors

#### a. Opportunity of Officer Swindells to View Castillo

At trial, Officer Swindells testified he saw a light-skinned Hispanic male with a white striped shirt shooting at him from the top of a fence. Officer Swindells testified he saw the suspect from the chest up, but only "glanced" at the suspect's face. He did not give a description after the incident; he stated he was "more focused on the [suspect's] gun." The record shows Officer Swindells did not see the suspect who was on top of the fence move into the yard. However, Officer Swindells testified he later saw the man from the fence kneeling in front of John Otten's body. Officer Swindells testified that at that moment, he could not see the suspect's face, and could not see whether he was armed, as Swindells was "just focused on [the suspect's] form … on the shape, on his body." Officer Swindells testified the suspect then raised his hand, revealing a handgun and began running toward the fence. Officer Swindells shot at him; the suspect fell to the ground for "a second or two" and climbed over the fence. The record shows this is the last time Officer Swindells saw the suspect during the incident.

#### b. Officer Swindells's Degree of Attention

Officer Swindells testified that at the time of the incident, he saw the suspect twice: first, on top of the fence, and then kneeling in front of Otten's body. Officer Swindells testified he saw the suspect on top of the fence for about "maybe a few seconds … ten, 15 seconds," but admitted he was mainly focused on the suspect's gun. Officer Swindells also saw the suspect kneeling in front of Otten's body. When asked how far away Officer Swindells was from the suspect at that point, compared to the distance in the courtroom, he stated it was from his seat at

the witness stand "to the second or the last row of the benches," which Castillo's trial counsel alleged was at least fifty feet. When asked how long he had a chance to look at the suspect, the Officer did not answer, stating "I had my gun trained on him."

### c. Accuracy of Officer Swindells's Prior Description of Castillo

The first time there is a record of Officer Swindells's description of the suspect is during his trial testimony. There is no record of the description Officer Swindells gave of the suspect over the radio after the incident on September 8, 2008, and he did not give a description of the suspect in the statement he provided to the police three weeks later. In a pre-trial motion, Castillo requested Officer Swindells identify him in an in-court lineup before trial, but the court denied the motion.

### d. Level of Certainty Demonstrated by Officer Swindells

Officer Swindells testified he saw a light-skinned Hispanic male with a white striped shirt shooting at him on top of a fence. However, Officer Swindells did not give a description of the suspect's face, and testified he was not sure of the color of the suspect's shirt stripes, as he was "more focused on the [suspect's] gun." At trial, Officer Swindells testified Castillo was the man he recognized as having shot him during the incident.

### e. Time Between the Crime and the Confrontation

The shooting incident occurred on September 8, 2008. Officer Swindells first in-court confrontation of Castillo occurred almost three years later after during trial on May 4, 2011.

**Weighing Biggers Factors against Corrupting Effect of the Pretrial Identification Procedure**

Once the historical facts are reviewed in the context of the *Biggers* factors in a light most favorable to the trial court's ruling, the factors must now be weighed against "the corrupting effect" of the suggestive pretrial identification procedure. *Loserth*, 963 S.W.2d at 774.

"A review of the cases which consider the question of impermissibly suggestive photographs shows that a clear majority have ultimately affirmed the conviction even though the photographs were used as a part of the State's case." *Loserth*, 985 S.W.2d at 545. The usual rationale for affirming the conviction is that there was a high reliability factor associated with the prior identification, and frequently there was ample other evidence that the defendant committed the offense. *See, e.g., Delk v. State*, 855 S.W.2d 700, 707 (Tex. Crim. App. 1993) (holding witness's detailed description of defendant prior to improper photographic presentation reduced likelihood she was reliant on photograph to identify defendant at trial); *Lang v. State*, 747 S.W.2d 428, 432 (Tex. App.—Corpus Christi 1988, no pet.) (finding overwhelming evidence that defendant was perpetrator of crime mitigated significance of impermissible pretrial identification procedure). Further, it is often difficult for the defendant to prevail on this issue because the defendant carries the burden on this point of showing that the in-court identification is unreliable by clear and convincing evidence. *Delk*, 855 S.W.2d at 706.

There are, however, cases in which courts have reversed convictions when there is a substantial doubt raised about the reliability of the in-court identification. *Loserth*, 985 S.W.2d at 546. In *Dispensa v. Lynaugh*, the Fifth Circuit reversed a Texas defendant's rape conviction, holding "[t]he out-of-court identification was inadmissible and the in-court identification could not stand without it." 847 F.2d 211, 221 (5th Cir. 1988). *Dispensa* applied the *Biggers* factors and found the most important factor was the witness's inability to describe the defendant before the impermissibly suggestive act. *Id.* at 220. Regarding the factors, the *Dispensa* court said: "Of these, by far the most significant in this case is the lack of accuracy of the witness's prior description of the criminal." *Id.* The *Dispensa* court found the victim's earlier inability to say whether her assailant had a moustache, was hirsute, and had a tattoo was fatal to the later

identification in court. *Id.*; *see also Proctor v. State*, 465 S.W.2d 759, 765 (Tex. Crim. App. 1971) (reversing conviction where "identification procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification as to amount to a denial of due process").

We believe the *Dispensa* observation applies to this case. The most significant of the *Biggers* factors in this case has to be the "lack of accuracy of the witness's prior description of the criminal." In our case, the first time there is a record of Officer Swindells's description of the suspect is during his trial testimony. There is no record of the description Officer Swindells gave of the suspect over the radio after the incident on September 8, 2008, and he did not give a description of the suspect in the statement he provided to the police three weeks later. Even in his in-court identification of the suspect, Officer Swindells did not get beyond describing the suspect as a "light-skinned Hispanic male with a white striped shirt." His written statement, however, did not mention this general description or "whether the criminal was Anglo, Mexican–American, or African–American." *See Loserth*, 985 S.W.2d at 546. In his testimony, Officer Swindells explained he was never asked. However, "[c]ommon sense tells us [] a hard-working police investigating unit . . . would have done everything they could have done to have a better description from the one eyewitness who could place the criminal at the . . . scene." *See id.*

A review of the remaining *Biggers* factors does not provide any significant credence to the reliability of Officer Swindells's in-court identification of Castillo. Officer Swindells's testimony shows he was only able to glance at the suspect's face for very short periods of time under significant stress, as most of his focus was on the alleged suspect's handgun. Furthermore, although he testified he was able to look at the suspect from the chest up, Officer Swindells was unclear about the color of the stripes of the suspect's shirt. This uncertainty supports Castillo's argument that Officer Swindells could not clearly identify the suspect.

"It is the vice of a corrupting procedure that thereafter a witness may be convinced that he or she is right and would have come to the same decision anyway." *Id.* at 547 (quoting *Simmons v. United States*, 390 U.S. 377, 383 (1968)). This is the very reason the Court in *Biggers* required a comparison of the accuracy of the prior description of the criminal with the description after the corrupting act has taken place. We find the dramatic change from having no record of Officer Swindells's description of the suspect to complete certitude in his in-court identification, after having seen Castillo's booking photo, raises serious questions about the reliability of Officer Swindells's in-court identification. Therefore, we hold the taint of the impermissibly suggestive pretrial identification of Castillo by Officer Swindells in looking at his booking photo gave rise to a very substantial likelihood of irreparable harm. *See Loserth*, 985 S.W.2d at 547. Weighing the *Biggers* factors de novo against the corrupting effect of the suggestive pretrial identification, we hold the in-court identification should not have been admitted. *See id.*

### *Independent Origin*

Having found that there was an impermissibly suggestive pretrial identification procedure rendering the in-court identification inadmissible, the State must show by "clear and convincing evidence" that the in-court identification was of "independent origin" if the in-court identification is to survive. *United States v. Wade*, 388 U.S. 218, 240 & n. 31 (1967); *Williams v. State*, 477 S.W.2d 885, 889 (Tex. Crim. App. 1982); *Loserth*, 985 S.W.2d at 547–48. In determining whether the evidence offered established the identification was of an independent origin, we consider the following factors:

> (1) the prior opportunity to observe the alleged criminal act; (2) the existence of any discrepancy between any pretrial lineup identification and the defendant's actual description; (3) any identification prior to the lineup of another person; (4) the identification by picture of the defendant prior to lineup; (5) the failure to

> identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the lineup identification.

*Wade*, 388 U.S. at 241; *Herrera v. State*, 682 S.W.2d 313, 318 (Tex. Crim. App. 1984) (adopting *Wade* factors for purpose of assessing independent origin); *Loserth*, 985 S.W.2d at 548. Although these factors resemble the *Biggers* factors, the *Wade* factors are used for a different purpose—to assess whether the State has sufficiently shown independent origin of the in-court identification testimony. *Herrera*, 682 S.W.2d at 318; *Loserth*, 985 S.W.2d at 548.

In *Jimenez v. State*, the appellate court invoked the *Wade* analysis and found there was no independent origin for an in-court identification. 787 S.W.2d 516, 520 (Tex. App.—El Paso 1990, no pet.). The case against the defendant in *Jimenez*, who was accused of rape, substantially rested on the victim's in-court identification of the defendant as her assailant. *Id.* Applying the *Wade* factors in a fact-intensive analysis, the *Jimenez* court concluded the witness's in-court identification was not of an independent origin, but rather was the result of pretrial identification procedures that created a substantial likelihood of misidentification. *Id.* at 523. A similar result was reached in *Coleman v. State*, 505 S.W.2d 878, 880 (Tex. Crim. App. 1974); *Proctor*, 465 S.W.2d at 765; and *Rawlings v. State*, 720 S.W.2d 561, 577 (Tex. App.—Austin 1986, writ ref'd).

We reach the same result. Although Officer Swindells had a prior opportunity to view the suspect during the criminal act, he had only fleeting opportunities to view at the suspect with any real attention. His view was from almost fifty feet away and lasted mere seconds. Moreover, he had been shot, and was, by his own admission, focused on the suspect's gun. Not surprisingly, Officer Swindells failed to give a detailed description of the suspect during his in-court identification.

"Clear and convincing evidence" is that evidence which is "so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind." *Martinez v. State*, 437 S.W.2d 842, 849 (Tex. Crim. App. 1969); *Durrough v. State*, 672 S.W.2d 860, 870 (Tex. App.—Corpus Christi 1984), *rev'd on other grounds*, 693 S.W.2d 404 (Tex. Crim. App. 1985); *Loserth*, 985 S.W.2d at 548. Although Officer Swindells testified he could have made the in-court identification without seeing the booking photograph, that statement does not constitute clear and convincing evidence of independent origin. The statement is not "so clear as to leave no substantial doubt." *Loserth*, 985 S.W.2d at 548.

The State had the burden of showing by clear and convincing evidence that the in-court identification of Castillo by Officer Swindells was not tainted by the impermissibly suggestive identification procedure, but was of "independent origin." *See id*. We hold the State failed to meet its burden. *See id*. Because Castillo met his burden of proving the impermissibly suggestive procedure used in this case gave rise to a very substantial likelihood of misidentification, and the State failed to establish independent origin, the in-court identification should have been suppressed. We hold the trial court abused its discretion in permitting the in-court identification of Castillo by Officer Swindells.

However, in conducting a harm analysis of this constitutionally based error, we cannot say beyond a reasonable doubt that the in-court identification of Castillo by Officer Swindells contributed to Castillo's conviction. *See* TEX. R. APP. P. 44.2 (noting court of appeals must reverse judgment if case reveals constitutional error that contributed to the conviction or punishment). The evidence in the record puts Castillo in the vicinity of the incident. Officer Swindells identified the suspect who shot him on top of the fence as the same man kneeling in front of Otten, and Castillo was later identified as Otten's brother. More importantly, in the

search for the suspect, Officer Campacos and an evidence technician followed a blood trail from the backyard that led them to Castillo, who was bleeding and hiding nearby beneath some stairs.

We defer to the factfinder's evaluation of the credibility of the evidence, and should not substitute our judgment for that of the jury. *King*, 29 S.W.3d at 562. The jury is the exclusive judge of the credibility of the witnesses and the weight given to their testimony. *Lancon*, 253 S.W.3d at 707. The record shows there was sufficient evidence, other than Officer Swindells's in-court identification of Castillo, to permit the jury to conclude Castillo was the perpetrator. *See Herrera*, 682 S.W.2d at 318 (noting that even if trial court erred in admitting identification, there was overwhelming evidence showing appellant was perpetrator, making court's error, if any, harmless beyond reasonable doubt). Accordingly, we overrule Castillo's point of error.

### EXTRANEOUS OFFENSE

Castillo next contends the trial court abused its discretion in admitting evidence of an extraneous offense in violation of Rule 404(b) of the Texas Rules of Evidence. He also complains the trial court denied him a jury instruction at the time the evidence was admitted.

### *Standard of Review*

We review a trial court's evidentiary ruling under an abuse of discretion standard. *Hines v. State*, 383 S.W.3d 615, 624 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). A trial court abuses its discretion only when its decision is outside the zone of reasonable disagreement. *Hines*, 383 S.W.3d at 625 (citing *Tienda*, 358 S.W.3d at 638). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed" regardless of the reason given for the trial court's ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

*Application*

Castillo complains the trial court should not have admitted evidence of the burglary, including the testimony of the homeowner, Steve Sondley. Although evidence of an extraneous offense is normally inadmissible pursuant to Rule 404(b) of the Texas Rules of Evidence, evidence of an extraneous offense is admissible as same transaction contextual evidence to show the context in which a criminal act occurred. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "This evidence is considered 'res gestae,' under the reasoning that events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence." *Id.* This type of evidence results when an extraneous matter is so intertwined with the State's proof of the charged offense that avoiding reference to it would make the State's case incomplete or difficult to understand. *Smith v. State*, 316 S.W.3d 688, 699 (Tex. App.—Fort Worth 2010, pet. ref'd). "Such evidence imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

In this case, the evidence of the burglary was necessary to show the events that occurred immediately prior to the shooting. It was necessary for the jury to know why Officer Swindells was in pursuit of John Otten, and how this pursuit led to the confrontation between Officer Swindells and Otten, and later between the officer and Castillo. Because the burglary started the chain of events, we find it was so intertwined with Officer Swindells's shooting and was essential for the jury to understand the context and circumstances surrounding the incident. *See id.* We hold the absence of this contextual evidence would "make the State's case incomplete or difficult to understand." *See Smith*, 316 S.W.3d at 699.

Regarding Castillo's argument that the trial court erred in failing to give a jury instruction after admitting the burglary evidence, the trial court did provide a limiting instruction in the jury charge. Accordingly, we find the trial court did not abuse its discretion in overruling Castillo's objection to the evidence. We overrule his point of error.

## FALSE TESTIMONY

Castillo also argues Officer Swindells gave false or fictitious testimony, violating his due process rights under the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, sections 10 and 19 of the Texas Constitution.

### *Standard of Review*

The State violates a defendant's due process rights when it actively or passively uses false or perjured testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly. *Ex Parte Chavez*, 371 S.W.3d 200, 207–08 (Tex. Crim. App. 2012); *Ex parte Castellano*, 863 S.W.2d 476, 481 (Tex. Crim. App. 1993). Although the State may not obtain a conviction through the use of perjured testimony, the appellant bears the burden of showing that the testimony used by the State was in fact perjured. *Losada v. State*, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986). Discrepancies in testimony alone do not establish perjury. *Id.* at 312.

### *Application*

Castillo complains Officer Swindells lied under oath, and points to discrepancies between the medical examiner's autopsy of John Otten and the officer's testimony. However, a review of the record shows Castillo failed to lodge a timely or specific objection when the allegedly false testimony was offered into the record. Castillo therefore failed to preserve this issue for appellate review. *See Haliburton v. State*, 80 S.W.3d 309, 315 (Tex. App.—Fort Worth 2002, no

pet.) (holding defendant must object to false testimony of witnesses to preserve issue for appellate review); *see also* TEX. R. APP. P. 33.1.

Even if we were to consider Castillo's argument, we hold the difference in testimony between the medical examiner's autopsy report and the officer's testimony merely amounts to discrepancies, not false testimony. *See Losada*, 721 S.W.2d at 312. Ultimately, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and the jury may accept or reject all or any part of a witness's testimony. *Lancon*, 253 S.W.3d at 707. We hold Castillo has not met his burden of showing Officer Swindells provided false testimony. *See Losada*, 721 S.W.2d at 311. Therefore, we overrule Castillo's point of error.

### REFUSAL TO ADMIT EVIDENCE AND PERMIT CROSS-EXAMINATION

Finally, Castillo claims the trial court abused its discretion when he was denied the right to question witnesses and cross-examine Officer Swindells about specific acts of conduct bearing on his credibility, in violation of the Sixth Amendment to the U.S. Constitution and to Art. 1, section 10 of the Texas Constitution.[4]

### *Standard of Review*

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Evidence in the form of opinion or reputation is admissible to impeach the credibility of a witness; however, the evidence may refer only to the witness's character for truthfulness or untruthfulness. TEX. R. EVID. 608(a). Additionally, Rule 608 provides that specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-

---

[4] Although Castillo presents a Confrontation Clause argument in this point of error, we find his argument only deals with admissibility of evidence.

examination of the witness nor proved by extrinsic evidence. TEX. R. EVID. 608(b); *see also Ruiz v. State*, 891 S.W.2d 302, 306 (Tex. App.—San Antonio 1994, pet. ref'd). Rule 609 goes on to limit impeachment of a witness by evidence of a conviction of a crime to crimes constituting a felony or involving moral turpitude, provided that no more than ten years have passed since the date of conviction. TEX. R. EVID. 609.

### *Application*

In the instant case, Castillo filed a pre-trial Motion for Production of Officer Swindells's Personnel Files for Inspection and Copying. He subsequently made an open records request. These requests were complied with, and the trial court agreed to examine the records in-camera for their admissibility.

After reviewing the evidence, the trial court determined a portion of the evidence was not admissible, ruling that opinion and reputation testimony was admissible, but not specific instances of conduct. At trial, Castillo argued Officer Swindells's file had numerous instances showing he was violent and not credible with citizens in the community. Castillo wanted to offer this information through the testimony of witnesses under Rule 405(b).

A review of the record shows no charges were brought against Officer Swindells for any of the alleged misconduct excluded by the trial court, nor was it shown that those events were connected to the offense Castillo was tried for. *See Bates v. State*, 587 S.W.2d 121, 133 (Tex. Crim. App. 1979). Furthermore, the evidence was not admissible to attack Officer Swindells's credibility because Rule 608(b) bars impeachment of a witness's general character for truthfulness through specific acts of conduct other than evidence of conviction of a crime. *See Dixon v. State*, 2 S.W.3d 263, 271 (Tex. Crim. App. 1998); TEX. R. EVID. 608(b), 609. Even assuming evidence of Officer Swindells's alleged misconduct was admissible as Castillo asserts,

the trial court could have reasonably determined that its probative value was substantially outweighed by the danger of unfair prejudice pursuant to Rule 403. *See* TEX. R. EVID. 403. Thus, we hold the trial court properly excluded the evidence.

Even if we were to hold the trial court erred in excluding the evidence, we find the error to be harmless. *See* TEX. R. APP. P. 44.2(b) (noting any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded). Castillo was allowed to cross-examine Officer Swindells, and elicited testimony that several civil law suits were filed against him. Witnesses were allowed to testify regarding their opinion that Swindells was violent and untruthful. However, there is no nexus between the offered incidents of misconduct and Castillo's shooting of Officer Swindells. More importantly, there was sufficient evidence that could have led the jury to conclude Castillo was the perpetrator. *See Herrera*, 682 S.W.2d at 318. Therefore, we overrule Castillo's point of error.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish